**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARK TOMLINSON,<br><br>Petitioner,<br><br>v.<br><br>WARDEN IAN M. HEALY,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:24-CV-02151-JPC<br><br>JUDGE J. PHILIP CALABRESE<br><br>MAGISTRATE JUDGE JENNIFER DOWDELL ARMSTRONG<br><br>**REPORT & RECOMMENDATION** |

## I. INTRODUCTION

Petitioner, Mark Tomlinson ("Mr. Tomlinson"), seeks a writ of habeas corpus under 28 U.S.C. § 2241. (ECF No. 1). Mr. Tomlinson is currently serving a 192-month sentence at FCI-Elkton for possession of MDMA and marijuana with intent to distribute. Mr. Tomlinson asserts that he is entitled to habeas relief because the Bureau of Prisons ("BOP") is improperly relying on an immigration detainer issued against him to deny him a transfer to home confinement or a residential reentry center ("RRC") pursuant to the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.

This matter was referred to me on March 7, 2025 under Local Rule 72.2 to prepare a report and recommendation on Mr. Tomlinson's petition. (*See* ECF non-document entry dated March 7, 2025). On September 22, 2025, Respondent, Warden Ian M. Healy ("Warden"), filed a return of writ and motion to dismiss Mr. Tomlinson's petition. (ECF No. 7). For the reasons set forth below, I recommend that the Court DISMISS and/or DENY Mr. Tomlinson's petition. I also recommend that the Court DENY Mr. Tomlinson's motion to expedite disposition of his petition or to release him on bail as moot.

## II. PROCEDURAL BACKGROUND

Mr. Tomlinson is a legal permanent resident who has resided in the United States since 1986. On April 14, 2015, he was sentenced to an aggregate term of 192 months in federal prison for possession of MDMA and marijuana with intent to distribute. (ECF No. 7-1, ¶ 3). Mr. Tomlinson is currently incarcerated at FCI-Elkton, with a projected release date of April 16, 2027. *Id*.

On April 14, 2025, Mr. Tomlinson, acting *pro se*, filed his 28 U.S.C. § 2241 habeas petition. (ECF No. 1). Mr. Tomlinson's habeas petition raises a single ground for relief:

1. The Warden and the Federal Bureau of Prisons have failed to timely apply his sentence credits mandated by the First Step Act of 2018.

(ECF No. 1-1).

On September 22, 2025, the Warden filed an answer/return of writ and motion to dismiss Mr. Tomlinson's petition. (ECF No. 7). On October 9, 2025, Mr. Tomlinson filed his traverse and opposition to the Warden's motion to dismiss. (ECF No. 8). On December 8, 2025, Mr. Tomlinson also filed a motion to expedite the disposition of his petition, or, in the alternative, for release on bail. (ECF No. 9).

## III. ANALYSIS

### A. <u>Time Credits Under the FSA</u>

In 2018, Congress enacted the FSA, which "established a system where eligible inmates can participate in evidence-based recidivism reduction programs to earn time credits toward their sentences." *Nycklass v. Healy*, No. 4:23-cv-2166, 2024 WL 1054408, at *1 (N.D. Ohio Feb. 15, 2024). Under the FSA, an eligible prisoner "shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i). A prisoner may also

earn an additional five days of credits for every 30 days of successful participation in programming or activities if the prisoner is "determined by the Bureau of Prisons to be at a minimum or low risk for recidivating" over two consecutive assessments. 18 U.S.C. § 3632(d)(4)(A)(ii).

Prisoners who earn good time credits under the FSA may be eligible for placement in prerelease custody or supervised release. Section 3632(d)(4)(C) provides that time credits for eligible prisoners "shall be applied toward time in prerelease custody or supervised release" and that the Director of the BOP "shall transfer eligible prisoners . . . into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). Section 3624(g) also provides that a prisoner "shall be placed in prerelease custody" if the prisoner (1) has earned credits equal to the remainder of the prisoner's term; (2) has maintained a minimum or low recidivism risk or has shown a demonstrated recidivism risk reduction; (3) has had the remainder of their term computed under applicable law; and (4) has been determined to be a minimum or low risk to recidivate for two consecutive assessments or has had an application for transfer to prerelease custody or supervised release approved by the warden of the prison. 18 U.S.C. § 3624(g)(1)(A)-(D) and 18 U.S.C. § 3624(g)(2).

Not all prisoners are eligible for prelease custody or supervised release under the FSA. Relevant here, the FSA prohibits certain non-citizen inmates who are subject to removal from applying good-time credits under the FSA. Specifically, Section 3632(d)(4)(E)(i) provides that a prisoner is ineligible to apply time credits toward prerelease custody or supervised release "if the prisoner is the subject of a final order of removal under any provision of the immigration laws . . . ." 18 U.S.C. § 3632(d)(4)(E)(i).

The FSA does not specifically address whether prisoners who are subject to an

immigration detainer—rather than a final order of removal—may apply time credits toward prerelease custody or supervised release. The BOP has taken conflicting approaches to that question over the years. For a period before February 2023, the BOP operated under Program Statement 5410.01, which provided that prisoners with "an unresolved immigration status" were prohibited from applying credits under the FSA. *See Tomlinson v. Garza*, No. 4:23-cv-00007, 2023 WL 4460506, at *1 (N.D. Ohio June 26, 2023).

On February 6, 2023, the BOP amended its procedures, providing that "unresolved immigration status" would no longer prohibit a prisoner from receiving credits under the FSA. See Change Notice, No. 5410.01 CN-1, U.S. Dep't of Justice, Federal Bureau of Prisons (Feb. 6, 2023) (available at https://www.bop.gov/policy/progstat/5410.01_cn.pdf, *last accessed* Feb. 5, 2026); *Tomlinson*, 2023 WL 4460506, at *2. Under the revised policy, only inmates subject to a final order of removal were prohibited from applying FSA good-time credits. *Id*.

According to the Warden, on April 8, 2025, the Department of Justice issued a memorandum that provided updated guidance regarding FSA time credit eligibility. (ECF No. 7-2, ¶ 12). Pursuant to that memorandum, non-citizen inmates who are subject to immigration detainers are no longer eligible for placement in prerelease custody. *Id*.[1]

### B. Mr. Tomlinson's Accrual of FSA Time Credits

During his incarceration, Mr. Tomlinson has accrued time credits under the FSA. According to a September 7, 2025 BOP assessment, Mr. Tomlinson had accrued 365 days of time credits toward his release and 655 days of time credits toward placement in an RRC or

[1] The Warden purported to attach the memorandum as an exhibit to the declaration of Bianca Shoulders, the Administrator in the Residential Reentry Management Branch, Reentry Services Division at BOP. (ECF No. 7-2). However, the declaration filed with the Court does not include any exhibits. The fact that the Department of Justice issued a policy change prohibiting inmates with immigration detainers from applying FSA time credits toward prerelease custody has been discussed in numerous cases, some of which I address below.

home confinement. (ECF No. 8-5). The Warden also concedes that, as of August 8, 2025, Mr. Tomlinson had earned 640 days of time credits that could be applied to prerelease custody if he were eligible.

Mr. Tomlinson argues that, in light of those credits, the BOP already should have transferred him to an RRC or home confinement. However, he states that the BOP has not done so and that he is unaware of whether the Warden or the BOP have begun the review process for a potential placement. In his return of writ and motion to dismiss, the Warden concedes that Mr. Tomlinson accrued sufficient time credits for prerelease custody as of September 2025, but argues that he is ineligible under the revised policy excluding all inmates who are subject to immigration detainers from applying FSA time credits toward prerelease control.

### C. Whether Mr. Tomlinson's Claim is Cognizable in Habeas

The Warden first argues that Mr. Tomlinson's habeas petition should be dismissed because he is challenging only the place of his confinement rather than the fact or duration of his confinement, and, thus, is bringing a conditions of confinement claim that is not cognizable in habeas. While there is some uncertainty around the issue, I conclude that the Warden's argument is not well-taken.

It is well-settled that a prisoner may file a § 2241 petition challenging the BOP's calculation of good time credits or its decision to deprive an inmate of those credits. *See Julick v. Synder-Norris*, No. 16-6652, 2017 WL 5485453, at *1 (6th Cir. Mar. 1, 2017) ("Habeas corpus jurisdiction exists under § 2241 when a prisoner claims that he was deprived of good-time credits without due process of law."); *Purely v. Toledo Fed. Court*, No. 3:24-CV-01211-JRK, 2025 WL 240737, at *6 (N.D. Ohio Jan. 17, 2025) ("A claim challenging the computation of FSA credits can be addressed in a § 2241 petition."), *report and*

*recommendation adopted*, 2025 WL 581090 (N.D. Ohio Feb. 21, 2025); *Harris v. Farley*, No. 4:11 CV 0619, 2011 WL 2472806, at *1 (N.D. Ohio June 22, 2011).

Mr. Tomlinson, however, is not challenging the BOP's computation of FSA credits, nor does he argue that the BOP improperly revoked any credits. Instead, Mr. Tomlinson argues that the BOP improperly refused to apply his credits toward prerelease custody despite statutory provisions that, he contends, obligate the BOP to do so. The law in this circuit is less clear regarding whether that argument is cognizable in habeas.

A petitioner's claim is properly brought under § 2241 where the petitioner "challenge[s] the fact or extent of [his] confinement by seeking release from custody." *Wilson v. Williams*, 961 F.3d 829, 837 (6th Cir. 2020). By contrast, "conditions of confinement claims seeking relief in the form of improvement of prison conditions or transfer to another facility are not properly brought under § 2241." *Id*. at 838.

The Warden argues that Mr. Tomlinson is bringing a conditions of confinement claim because he merely seeks transfer to another facility—namely home confinement or placement in an RRC. Some courts in this circuit have held that prisoners seeking transfer to home confinement cannot assert their claims under § 2241. *See Travis v. Beard*, No. 0-20-131-HRW, 2020 WL 6532822, at *1 (E.D. Ky. Nov. 5, 2020) ("Such relief – release to a halfway house or home confinement – is only available by motion made pursuant to 18 U.S.C. § 3582(c)."); *Tripp v. Rardin*, No. 25-cv-10626, 2025 WL 1037246, at *1 (E.D. Mich. Mar. 11, 2025) (holding that request for transfer to medical facility or home confinement was not cognizable under § 2241).

However, the Sixth Circuit has cited with approval a concurring opinion from Justice Scalia and a Seventh Circuit decision holding that habeas is the proper vehicle "for claims

that would *change the level of custody*, shorten its duration, or terminate it completely." *Terrell v. United States*, 564 F.3d 442, 447-48 (6th Cir. 2009) (emphasis added) (citing *Wilkinson v. Dotson*, 544 U.S. 74, 85 (2005) (Scalia, J., concurring); *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991)). Moreover, several courts within this circuit have held that prisoners seeking immediate transfer to home confinement must pursue that relief through a habeas petition. *See Day v. Chambers-Smith*, No. 4:20CV1583, 2021 WL 395816, at *2 (N.D. Ohio Feb. 4, 2021) ("It is well-established that relief in a civil rights action is not available where a prisoner seeks immediate or speedier release from his incarceration [to home confinement]. Rather, a writ of habeas corpus is a prisoner's sole federal remedy for seeking release from incarceration."); *Conley v. Healy*, No. 5:24-cv-1430, 2025 WL 1509989, at *4 (N.D. Ohio May 28, 2025) (holding that prisoner's challenge to BOP determination that prisoner was ineligible to apply FSA time credits toward prerelease custody was cognizable under § 2241), *report and recommendation adopted*, 2025 WL 1736695 (N.D. Ohio June 23, 2025); *United States v. Tolbert*, No. 3:08-CR-0142-CRS, 2020 WL 3964752, at *2 (W.D. Ky. July 13, 2020) ("It appears that after exhausting administrative remedies a prisoner may seek review of a BOP decision regarding placement in home confinement or in a halfway house under the Second Chance Act by filing a 28 U.S.C. § 2241 petition for writ of habeas corpus.").

Given the nature of the relief Mr. Tomlinson is seeking—transfer from prison to a less-restrictive form of confinement—I conclude that the latter line of cases is more persuasive. Thus, while there is some uncertainty regarding the question, I will assume that

Mr. Tomlinson may pursue his claim through a § 2241 habeas petition.[2]

**D. The BOP's Discretion to Determine the Place of Confinement**

The Warden next argues that the Court should dismiss Mr. Tomlinson's petition because the BOP has exclusive authority to determine a prisoner's place of confinement and because a court may not second guess the BOP's determination, even under the FSA. While the issue is again not free from doubt, I conclude that the Warden's argument is well-taken.

Section 3621(b) provides that the BOP "shall designate the place of the prisoner's imprisonment . . . ." 18 U.S.C. § 3621(b). "The Bureau of Prisons has broad discretion in administering a prisoner's sentence, and decisions to place a convicted defendant within a particular program or a particular facility are decisions with the sole discretion of the Bureau of Prisons." *Klawonn v. United States*, 11 F. App'x 559, 561 (6th Cir. 2001) (citation omitted). Thus, a sentencing court "has no authority to order that a convicted defendant be confined in a particularly facility or placed in a particular program." *Id*. Moreover, the BOP's "designation of a place of imprisonment . . . is not reviewable by any court." 18 U.S.C. § 3621(b).

Courts in this circuit have generally held that the BOP has sole discretion to determine whether a prisoner should be placed in an RRC or home confinement, even after enactment of the FSA. *See Weiss v. Healy*, No. 4:23 CV 2074, 2024 WL 6085281, at *2 (N.D. Ohio Oct. 24, 2024) ("the court cannot order home confinement or immediate placement in an RRC"); *Frierson v. Rardin*, No. 2:24-CV-12456, 2025 WL 410072, at *5 (E.D. Mich. Feb. 5, 2025) (holding that a court has "no power" to order release to home confinement because "[t]he

[2] Courts in this district have consistently held that a prisoner must exhaust his administrative remedies before pursuing a claim under § 2241 involving time credits. *See, e.g., Weiss v. Healy*, No. 4:23-CV-2074, 2024 WL 1858529, at *4 (N.D. Ohio Mar. 15, 2024); *Conley*, 2025 WL 1509989, at *4. The Warden does not dispute that Mr. Tomlinson properly exhausted his administrative remedies here.

First Step Act did not alter the BOP's statutory authority to determine when, or if, a petitioner should be released to a residential reentry center or to home confinement"); *Abbott v. Rardin*, No. 2:25-CV-10739-TGB-PTM, 2026 WL 116419, at *4 (E.D. Mich. Jan. 15, 2026) ("the FSA did not alter the BOP's statutory, discretionary authority under the [Second Chance Act] to determine when, or if, a prisoner should be placed in an RRC or home confinement").

None of those cases involved the BOP's recent policy change to deny transfer to prerelease custody for all prisoners who are subject to an immigration detainer. The parties have not cited any cases in this circuit addressing that issue, and my independent research likewise has not identified any such cases. The propriety of the BOP's policy thus appears to be an issue of first impression in this circuit. However, given the consistent holdings of courts in this circuit that the FSA did not eliminate the BOP's discretion to determine when, or if, placement in prerelease custody is warranted, I conclude that the BOP's decision is not reviewable and that the Court should dismiss Mr. Tomlinson's petition because the BOP's actions fall within its broad discretion.

The issue is not beyond dispute. While no court in this circuit appears to have addressed the issues Mr. Tomlinson raises in his petition, a number of courts throughout the country have. As further support for my conclusion, a number of those courts have held that the petitioners' claims fail in light of the BOP's broad discretion to determine the place of imprisonment. *See Akinmadeyemi v. Warden Thompson, FCI Fort Dix*, No. 24-7003 (KMW), 2025 WL 2857084, at *2 (D.N.J. Oct. 9, 2025) ("Given its plenary control and broad discretion over prisoner placement decisions, the BOP is well within its authority to determine that 'a foreign citizen assigned a "deportable alien" public safety factor [in light of an immigration detainer] is ineligible to use earned [First Step Act] time credits for immediate

release to residential re-entry programs or home confinement.'") (quoting *Pisman v. Warden, Allenwood FCI Low*, No. 23-2048, 2023 WL 6618238, at *1 (3d Cir. Oct. 11, 2023)); *Balsam v. Warden, Coleman – Low*, No. 5:24-cv-360-SPC-PRL, 2025 WL 2687234, at *3-4 (M.D. Fla. Sept. 19, 2025) ("[c]ourts generally do not have the authority to direct the BOP to place a prisoner in prerelease custody"); *Alqsous v. Emmerich*, 24-cv-722-jdp, 2026 WL 125691, at *5 (W.D. Wis. Jan. 16, 2026) ("I conclude that the better view is that the FSA did not strip the BOP of its discretion to deny prerelease custody to prisoners with immigration detainers.")

As the Warden concedes, however, other courts have reached a different conclusion. In *Williams v. Warden, FCI Berlin*, 793 F. Supp. 3d 412 (D.N.H. 2025), for example, the court held that the BOP's policy "defies the consensus among district courts that 'BOP may [not] rely solely on immigration detainer to deny application of credits earned under the statute.'" *Id*. at 419 (quoting *Harriot v. Jamison*, No. 24 Civ. 208 (AT) (JLC), 2025 WL 384556, at *6 (S.D.N.Y. Feb. 4, 2025)). The court also held that the BOP's policy violated the "mandatory language" of the FSA that that an eligible prisoner "shall be placed in prerelease custody." *Id*. (citing 18 U.S.C. § 3624(d)(4)(C)).

Other decisions are in accord. *See Mateo v. Warden, FCI Danbury*, No. 3:25-cv-00814 (VAB), 2025 WL 2625263, at *6 (D. Conn. Sept. 11, 2025) ("Consistent with the plain text of this provision of the First Step Act, courts across the country have held that the statute imposes a mandatory duty on BOP to apply earned-time credits, subject to statutory eligibility requirements."); *Kuzmenko v. Phillips*, No. 2:25-cv-00663-DJC-AC, 2025 WL 779743, at *6 (E.D. Cal. Mar. 10, 2025) ("the Court agrees with other district courts in this circuit that the language in section 3632(d)(4)(C) is mandatory"); *Adepoju v. Scales*, 782 F. Supp. 3d 306, 321 (E.D. Va. 2025) (holding that the FSA "does not afford the BOP discretion regarding the

calculation or application of time credits").

I acknowledge that those cases could conceivably support a different result here. However, the weight of authority in this circuit remains that the BOP has broad discretion to determine prisoner placement and that the FSA did not eliminate that discretion or give courts the power to dictate placement decisions. Accordingly, I cannot conclude that the BOP's actions violated the FSA or that the Court has the authority to order the BOP to transfer Mr. Tomlinson to prerelease custody. I therefore recommend that the Court dismiss and/or deny Mr. Tomlinson's petition. I also recommend that the Court deny Mr. Tomlinson's motion to expedite disposition of his petition or to release him on bail as moot.

## IV. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Tomlinson's petition for a writ of habeas corpus under 28 U.S.C. § 2241. I also recommend that the Court DENY AS MOOT Mr. Tomlinson's motion to expedite disposition of his petition or, alternatively, to release him on bail.

Dated: February 6, 2026

*<u>/s/ Jennifer Dowdell Armstrong</u>*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for

> such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).