**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARK TOMLINSON, | ) | Case No. 4:24-cv-02151 |
| | ) | |
| Petitioner, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jennifer Dowdell Armstrong |
| WARDEN IAN M. HEALY, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

## <u>OPINION AND ORDER</u>

Petitioner Mark Tomlinson, a prisoner in federal custody, filed a petition for a writ of habeas corpus without a lawyer pursuant to 28 U.S.C. § 2241.  He seeks transfer to home confinement or a residential reentry center pursuant to the First Step Act of 2018 and claims that the Bureau of Prisons has improperly denied this transfer based on an immigration detainer.  The Magistrate Judge issued a report and recommendation that the Court dismiss and/or deny the petition (ECF No. 10), to which Mr. Tomlinson objected (ECF No. 11).  For the reasons that follow, the Court **OVERRULES** the objections, **ADOPTS** the recommendation, and **DISMISSES** the petition.

### STATEMENT OF THE CASE

#### A.     Factual and Procedural Background

Since 1986, Petitioner Mark Tomlinson has resided in the United States as a legal permanent resident.  (ECF No. 10, PageID #127.)  On April 14, 2015, he was sentenced to 192 months in federal prison, followed by 5 years of supervision for

possession of marijuana and MDMA (ecstasy) with intent to distribute.  (ECF No. 7-1, ¶ 3, PageID #77–78.)  Since March 2022, he has served his sentence at the Federal Correctional Institution at Elkton in Lisbon, Ohio.  (*Id.*, ¶ 5, PageID #78.)

During Mr. Tomlinson's incarceration, he took advantage of recidivism-prevention programming and incentives available to federal prisoners under the First Step Act, and thereby earned time credits that may be applied to transfer to a residential reentry center placement, home confinement or supervised release if he is otherwise eligible.    (ECF  No.  7-2,  ¶  11,  PageID  #98.)    As of August 2025, Mr. Tomlinson had accumulated 365 days of credit toward early supervised release and 640 days of credit toward placement in pre-release custody.  (*Id.*)  As a category, prerelease custody includes such arrangements as home confinement or community placement at residential reentry center.  18 U.S.C. § 3624(c).

On March 28, 2020, the Department of Homeland Security notified the Bureau of Prisons that Mr. Tomlinson was the subject of an immigration detainer due to information that he "either lacks immigration status or notwithstanding such status is removable under U.S. Immigration law."  (ECF No. 1-8, PageID #28.)  Though he is not a citizen of the United States, Mr. Tomlinson has been a lawful resident of the country since 1986.  (ECF No. 1-7, PageID #27; *see also* ECF No. 1-1, PageID #10.) The  immigration  detainer  reflects  that  an  investigation  has  been  initiated  to determine whether Mr. Tomlinson is subject to removal from the United States.  (ECF No. 7-2, ¶ 9, PageID #97.)

Until recently, Mr. Tomlinson's immigration status and detainer bore no obvious conflict with his ongoing accumulation of time credits under the First Step Act. (*See* ECF No. 1-8, PageID #29.) On April 8, 2025, however, the Bureau of Prisons issued a new policy memorandum concerning inmates like Petitioner with immigration detainers but without a final order of deportation. (ECF No. 7-2, ¶ 12, PageID #98; ECF No. 10, PageID #130 & n.1.) Under this new policy, the Bureau of Prisons applies up to 365 days of time credits toward early release, but any remaining time credits cannot be used for transfer to prerelease custody. (ECF No. 10, PageID #130.) In short, inmates who are not citizens are no longer eligible for placement in prerelease custody. Once placed in a halfway house or other community placement, a person with a detainer is subject to arrest by immigration authorities, resulting in at least a technical escape and interruption of his federal sentence. (ECF No. 1-8, PageID #29.)

Mr. Tomlinson applied 365 days of time credits toward early release, and he now seeks a writ of habeas corpus to apply his remaining credits toward prerelease custody. (ECF No. 1, PageID #10.) Respondent acknowledges that Petitioner exhausted all administrative remedies. (Doc 7-1, PageID #68.) However, Respondent contends that the petition should be dismissed because the relief that Mr. Tomlinson seeks is unavailable in habeas corpus and because the First Step Act allows the Bureau of Prisons to enact the policy in question. (ECF No. 7, PageID #69-71.)

**B.      Report and Recommendation**

The Magistrate Judge recommends that Mr. Tomlinson be allowed to proceed under habeas corpus but that his claim be denied on the merits. Specifically, the

Magistrate Judge found that the Bureau of Prisons "has sole discretion to determine whether a prisoner should be placed in [a residential reentry center] or home confinement, even after enactment of the [First Step Act]." (ECF No. 10, PageID #133; *see also id.*, PageID #134.)

###### C.     Objections

Petitioner offers three objections to the report and recommendation. First, he asserts that his desire to be placed in prerelease custody centers on a liberty interest rather than a "place of confinement" that falls within the purview of the Bureau of Prisons. (ECF No. 11, PageID #138-40.) Second, he suggests that any precedents on which the Magistrate Judge relies to determine the breadth of discretion the Bureau of Prisons enjoys have no application because they predate the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 396 (2024), which ended judicial deference to agencies' statutory interpretations. (*Id.,* at PageID #140–41.) Third, Petitioner argues that the "history and specifics of this particular situation favor relief." (ECF No. 11, PageID #141.)

#### ANALYSIS

After the report and recommendation is filed, if a party objects within the allotted time, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed R. Civ. P. 72(b). Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Importantly, the court's job is not to conduct a free-wheeling examination of the entire report and

4

recommendation, but only to address any specific objections that a party has advanced to some identified portion of it.  Accordingly, it is the Court's task in this matter to review the Magistrate Judge's report and recommendation de novo, based on the specific objections that Petitioner raises.

## I.     The First Step Act

The First Step Act of 2018 reauthorized and expanded a series of federal prison reforms aimed at reducing recidivism and facilitating a prisoner's reentry into society through transitional services and behavioral incentive structures.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194; 34 U.S.C. § 60501.  In particular, the First Step Act "established a system of time credits and provided eligible inmates the opportunity to earn those credits for participating in evidence-based recidivism reduction programming and productive activities."  *Vallares v. Ray,* 130 F.4th 74, 79 (4th Cir. 2025).  This system "operates separately from other pre-existing 'credit' systems, including the credits prisoners earn for good behavior during incarceration." *Komando v. Luna*, No. 22-cv-425, 2023, WL 310580, at *3 (D.N.H. 2023).

Under the First Step Act, an eligible prisoner "shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities."  18 U.S.C. § 3632(d)(4)(A)(i).  Once earned, credits under the First Step Act "shall be applied toward time in prerelease custody or supervised release."  *Id*. § 3632(d)(4)(C).  However, no more than twelve months' worth of these credit may be applied toward early transfer into supervised release. *Id*. § 3624(g)(3).  A prisoner is ineligible to participate if he is serving a sentence for a disqualifying crime or if he is "the subject of a final order of removal under any

5

provision of the immigration laws." *Id.* §§ 3632(d)(4)(D) & (E)(i).  Mr. Tomlinson's immigration detainer does not amount to a disqualifying "final order of removal" under *Id.* § 3632(d)(4)(E)(i), and Respondent does not suggest otherwise. The Bureau of Prisons "shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." *Id.* § 3632(d)(4)(C).

Here, notwithstanding the statute's use of the term "shall," *id*, Respondent declined to apply credits under the Act to Mr. Tomlinson.  As the Magistrate Judge notes (ECF No. 10, PageID #129), the Bureau of Prisons has taken different approaches to this issue over time.  For their part, federal district courts have also taken competing positions on the issue whether a petitioner, such as Mr. Tomlinson, is entitled to credits toward prerelease custody or whether the Bureau of Prisons retains discretion to determine the matter.  "A number of courts have interpreted [Section] 3632(d)(4)(C) to mandate that *all* earned time credits must be applied *either* toward early supervised release *or* toward prerelease custody because there is no statutory cap on time credits applied to prerelease custody.  In contrast, other courts have found that the application of excess earned time credits and such placement in pre-release is in the discretion of the [Bureau of Prisons]." *Duroseau v. Noem*, No. 3:25-cv-02041, 2025 WL 3172106, at *5 (M.D. Pa. 2025) (citations omitted).  The Supreme Court and the Sixth Circuit have yet to speak to the issue.

## II.    Jurisdiction

The Magistrate Judge assumed that Mr. Tomlinson may bring a habeas petition to challenge the BoP's refusal to apply credits toward prerelease custody. (ECF No. 10, PageID #130–33.)  Respondent does not object to this or any other aspect

of the Magistrate Judge's report and recommendation.  Still, the Court has an independent obligation to examine its jurisdiction.  *See, e.g.*, *Nikolao v. Lyon*, 875 F.3d 310, 315 (6th Cir. 2017) (citations and quotations omitted); *Mercurio v. American Express Centurion Bank*, 363 F. Supp. 2d 936, 938 (N.D. Ohio 2005).  Therefore, the Court addresses the question based on the record before it.

18 U.S.C. § 3621(b) opens with a baseline principle: "The Bureau of Prisons shall designate the place of the prisoner's imprisonment," and the statute prescribes five factors for prison officials to consider in making such designations. "Notwithstanding any other provision of law, a designation of a place of imprisonment under this statute is not reviewable by any court."  18 U.S.C. § 3621(b)(5).  When the statute turns specifically to the role of prerelease custody and home confinement, it reiterates: "'Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under Section 3621."  18 U.S.C. § 3624(c)(4).

"Habeas corpus jurisdiction exists under § 2241 when a prisoner claims that he was deprived of goodtime credits without due process of law."  *Julick v. Synder-Norris*, No. 16-6652, 2017 WL 5485453, at *1 (6th Cir. Mar. 1, 2017).  This principle extends to "claims that would change the level of custody, shorten its duration, or terminate it completely."  *Terrell v. United States*, 564 F.3d 442, 447–48 (6th Cir. 2009) (citing *Wilkinson v. Dotson*, 544 U.S. 74, 85 (2005) (Scalia, J., concurring); *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991)).  But it is "not always immediately clear whether a prisoner challenges the fact of confinement or the

7

conditions of confinement." *Alqsous v. Emmerich*, No. 25-cv-722, 2026 WL 125691, at *3 (W.D. Wis. Jan. 16, 2026).

Here, however, Petitioner makes clear that he seeks release from confinement and brings more than just a challenge to the designation of his place of his confinement—prison versus home detention, a halfway house, or another form of prerelease custody.  (ECF No. 11, PageID #138–39.)  As he says, "[h]e is not concerned with where he serves his prison time—he is concerned with being in prison."  (*Id.*, PageID #139.)  Because a person remains in the custody of the Bureau of Prisons whether housed in a federal correctional institution or placed in prerelease custody, the answer to the jurisdictional question is not at all clear.  On the facts and circumstances of this case, the Court agrees that it has jurisdiction over Mr. Tomlinson's habeas petition under Section 2241 because he seeks release from prison to a materially and substantially less restrictive environment in prerelease custody.

## III.    Petitioner's Objections

The Court addresses Petitioner's first two objections together.  Strictly, these objections go to federal habeas jurisdiction, an issue which the Magistrate Judge and the Court decided in his favor.  Because he proceeds *pro se*, the Court takes the objection instead as going to a reading of the statute that confers any discretion on the Bureau of Prisons in the face of its mandatory language regarding credits under the First Step Act.  But the statute does not use the mandatory language in 18 U.S.C. § 3632(d)(4)(C) in a vacuum.

Nothing in the prerelease custody statute "shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under Section 3621," which governs the designation of the place of confinement for a prisoner.  18 U.S.C. § 3624(c)(4).  Under one reading, a designation means placement within a particular federal correctional institution, before eligibility for any prerelease custody.  After all, the authority in Section 3621(a) of the Bureau of Prisons to hold a person is subject to prerelease custody in Section 3624.  Perhaps Congress could have written this statute—or, more accurately, the interlocking statutory provisions—more clearly. But the express language appears reasonably straightforward:  the Bureau of Prisons shall calculate time credits and apply them to supervised release and prerelease custody, but the prerelease custody statute does not limit the discretion of the agency to carry out its statutory duties.

Under the prerelease custody statute, the Bureau of Prisons "shall, to the extent practicable," ensure that a person serves part of his sentence in prerelease custody.  *Id.* § 3624(c)(1).  "To the extent practicable" sounds less like a mandatory, non-discretionary obligation in every case and more like a congressional policy that the Bureau should follow to the greatest extent possible.  After all, many more inmates will earn credits toward prerelease custody than the Bureau of Prisons has spaces or other resources for appropriate placements.  And the statute states the purpose of prerelease custody:  to afford a "prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." *Id.* Where a prisoner is subject to removal proceedings, this statutory purpose has less force.  In

9

such circumstances, the Bureau may practicably decide that scarce prerelease resources are better spent to assist a person in adjusting to and preparing for reentry to the community.  Mr. Tomlinson might not be such a person.

Finally, *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), has no application here.  This is so for the simple reason that the Magistrate Judge (and the Court) did not defer to the agency in interpreting the statute.  That is, Respondent proffered no interpretation of the statute to which any judicial officer deferred.  Instead, the Magistrate Judge (and the Court) read the statute and gave it its intended force and effect, fulfilling the function of the judicial department to say what the law is.  *Loper Bright* does *not* mean that courts will read statutes not to confer operational or administrative discretion on agencies.  Nor does the Court have the constitutional or statutory authority to run a part of the Executive Branch, though rulings from district courts to the contrary are enjoying their fifteen minutes of fame.

To the extent anything remains of Petitioner's third objection, Mr. Tomlinson presents the facts and circumstances of his particular situation as if the Court were deciding a question of detention before trial under Section 3142.  But a habeas petition tests the lawfulness of detention.  It is not an invitation to district courts to rule on a blank slate or to impose its own particularized notions of justice.  Instead, it is collateral to the merits.  Here, the Bureau of Prisons has declined to use its scarce resources to release Mr. Tomlinson into the community where he may be subject to removal proceedings.   Understanding that these different options present qualitatively different restraints on Mr. Tomlinson's liberty, whether incarcerated or

10

held in prerelease custody, Mr. Tomlinson remains in the custody of the Bureau of Prisons.  That custody, that infringement on Mr. Tomlinson's liberty, is lawful.

## CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Petitioner's objections (ECF No. 11), **ADOPTS** the Magistrate Judge's Recommendation (ECF No. 10), and **GRANTS** Respondent's motion to dismiss (ECF No. 7).

**SO ORDERED.**

Dated:  March 26, 2026

 

J. Philip Calabrese
United States District Judge
Northern District of Ohio